## Case No. 1,168.

### BEAN v. BROOKMIRE et al.

[1 Dill. 25;[1] 4 N. B. R. 196, (Quarto, 57;) 10 Am. Law Reg. (N. S.) 181; 4 West. Jur. 392.]

Circuit Court, D. Missouri. 1870.

BANKRUPT ACT—LIMITATION— THIRTY-FIFTH SECTION CONSTRUED.

1. The two clauses of the 35th section of the bankrupt act [of March 2, 1867, (14 Stat. 534,)] apply to transfers to two different classes of persons dealing with the bankrupt. The first clause applies to a creditor or a person having a claim against the bankrupt, or who is under a liability for him and who receives the money or property by way of preference; and the second clause applies to the purchase of property of the bankrupt by any person who has no claim against him and is under no liability for him.

[Cited in Ex parte Mendell, Case No. 9,418; Darby v. Boatman's Sav. Inst., Id. 3,571; Re Dow, Id. 4,036; Hall v. Hayner, Id. 5,933; Harvey v. Crane. Id. 6,178; Collins v. Gray, Id. 3,013; Coggeshall v. Potter, Id. 2,955; Gibson v. Warden, 14 Wall. (81 U. S.) 249; Bean v. Amsinck, Case No. 1,167; Bean v. Brookmire, Id. 1,170; Anibal v. Heacock, 2 Fed. 171; Matthews v. Westphal, 48 Fed. 665.]

2. The four and six months limitations in the 35th section of the bankrupt act considered; and it is held that where the transaction by the insolvent is with a creditor, the four months limitation applies, but where the transaction is with a general purchaser the six months limitation governs.

[Cited in Bean v. Brookmire, Case No. 1,169; Ex parte Mendell, Id. 9,418; Darby v. Boatman's Sav. Inst., Id. 3,571; Re Dow, Id. 4,036; Hall v. Hayner, Id. 5,933; Harvey v. Crane, Id. 6,178; Collins v. Gray, Id. 3,013; Coggeshall v. Potter, Id. 2,955; Gibson v. Warden, 14 Wall. (81 U. S.) 249; Bean v. Amsinck, Case No. 1,167; Bean v. Brookmire, Id. 1,170; Re Bousfield & Poole Manuf'g Co., Id. 1,703; Re Foster, Id. 4,964; Anibal v. Heacock, 2 Fed. 171; Matthews v. Westphal, 48 Fed. 665.]

3. Accordingly, where in an action by the assignee under the 35th section of the act the declaration alleged a payment by the bankrupt to the defendants, in liquidation of an existing debt and to have been made to them as creditors of the bankrupt, with intent to give a preference; and alleging that this was done within six months, but not within four months of the filing of the petition under which the bankruptcy was established, it was held to be demurrable.

[Cited in Bean v. Brookmire, Case No. 1,169; Harvey v. Crane, Id. 6,178; Collins v. Gray, Id. 3,013.]

4. All illegal or fraudulent transactions which are so by the common law, by the statute law, or by rules of law, other than the special limitations in the 35th section of the bankrupt act are governed by the limitation of two years upon the assignee in bringing the suit. (Arguendo per Miller, Circuit Justice.)

5. Purpose and policy ·of the bankrupt act stated by Miller, Circuit Justice.

[Cited in Darby v. Boatman's Sav. Inst., Case No. 3,571; Re Scott, Id. 12,518.]

[Error to the district court of the United States for the eastern district of Missouri.]

At law. This was an action, by [William C.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Bean] the assignee in bankruptcy of Charles S. Kintzing, brought under the 35th section of the bankrupt act to recover of the defendants [Brookmire and others] the value of certain property alleged to have been conveyed by the bankrupt to them, in fraud of the bankrupt law.

The district court (TREAT, District Judge,) sustained demurrers to the declaration, [unreported,] and the cause came into the circuit court on a writ of error. [Affirmed.] The facts sufficiently appear in the opinion of the court.

Edmund T. Allen, for plaintiff.

George M. Stewart, for defendants.

Before MILLER, Circuit Justice, and KREKEL, District Judge.

MILLER, Circuit Justice. This case comes before us on a writ of error to the district court for the eastern district.

The plaintiff in error brings his suit to recover as assignee of the bankrupt the sum of $1,436.00 paid to the defendants within six months, but not within four months of the filing of the petition under which the bankruptcy was established. The declaration contains two counts intended to cover the two clauses of the thirty-fifth section of the bankrupt law, in one of which the transaction is described as a payment in liquidation of an existing debt, and in the other it is alleged to have been made to defendants as creditors of the bankrupt with intent to give a preference. In both counts, the insolvency of the bankrupt at time of the transaction is alleged, and also the knowledge or notice of that fact on the part of defendants, and that it was within six months of the filing of the petition in bankruptcy.

Demurrers were filed to both counts by defendants which were sustained by the district court, and this ruling is the error assigned here. The determination of the question here presented necessarily involves a construction of the section of the bankrupt act just referred to, or rather the first two clauses of it, which are in the following words: "And be it further ·enacted, that if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefitted thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall

be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefitted; and if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud."

And I commence the examination into the true meaning of the section in its application to the question before me, by affirming what I am told was held in this same court at the last term, namely: that the two clauses differ mainly in their application to two different classes of recipients of the bankrupt's property or means. That is to say, that the first clause is limited to a creditor or person having a claim against the bankrupt, or who is under any liability for him, and who receives the money or property by way of preference; and the second clause applies to the purchase of property of the bankrupt by any person who has no claim against him and is under no liability for him. That the first clause is confined to persons of that character, cannot well be doubted, since the acts therein mentioned are acts done with persons of that character, and must be done with a view to giving such a person a preference over others of the same class. That the second clause has reference to another class of persons and is governed by other rules, seems to be strongly sustained by these considerations:

1. The sale or other transfer of property mentioned in it need not be in preference of a creditor or person liable for the bankrupt, to make it void.

2. It need not be made to a person of that character.

3. In the first clause the transfer may still be valid though within all the other conditions of the clause, if made more than four months before the filing of a petition in bankruptcy, while the transfer described in the second clause requires that it shall have been made more than six months before the filing of the petition, to have the same effect.

These are sufficient reasons to justify our conviction that the two clauses apply to transfers to two different classes of persons dealing with the bankrupt.

It is objected to this view that in the second clause payment is one of the acts described, as well as in the first, and that the word necessarily implies a transaction between debtor and creditor.

The force of this objection is fully met by the language of that part of the section which makes void the acts against which it is directed, and which, while declaring that such "sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof," omits to make any such provision as to payment, while in the invalidating language of the first clause, that is the first word used.

The word "payment" may have been used in the second clause inadvertently, or in a loose sense to include some consideration advanced by the insolvent in some, one of the transactions otherwise forbidden; but, however it came to be used, it is quite certain that it is intentionally omitted where the transactions are mentioned which are declared to be void.

The payment described in both counts of this declaration is not one covered by the second clause of the section. It is a payment of money to a creditor on account of an existing debt, and is a preference within the meaning of the law. It is clearly one of the transactions described in and forbidden by the first clause, and therefore not included within the second. We need, therefore, inquire no further concerning its relation to the latter.

In regard to the first clause, both counts would be good under that, if they contained the averment, that the transaction described took place within four months before the filing of the petition in bankruptcy. But this allegation cannot truthfully be made, and the principal question in this case is whether that is necessary to make the count good.

The language of the section is, that if any person being insolvent, or in contemplation of insolvency, within four months of the filing of the petition by or against him, with a view to give the creditor a preference by any of the acts therein mentioned, the act shall be void, and the assignee may recover the property from the person receiving it, if such person had reasonable cause to believe the party insolvent. It is very certain that the act described is not made void by this clause, or by any clause in this section, unless it was done within four months of the filing of a petition by or against the bankrupt, and it is as strong an instance as can well grow out of a negative pregnant, that no such act is void for any of the causes there mentioned that was done within the four months.

In opposition to this view of the subject, it is earnestly contended that one of the clauses of the thirty-ninth section of the act de-

scribes pretty nearly in the same language the acts mentioned in the thirty-fifth section, and concludes that section with the declaration that if the person doing such acts shall be declared bankrupt, the assignee may recover the property transferred contrary to the provisions of the statute, making no restrictions as to time; and that the two sections can only be reconciled in this regard, by holding that the special provisions of section thirty-five are to be taken as a rule of evidence, not imperative, but prima facie, that the transaction was fraudulent, if within the period therein mentioned.

Having thus stated the opposite opinions of this thirty-fifth section, maintained by counsel, I do not know that I can do better than to state my own views of the policy which governed congress in its adoption.

The acts mentioned in the section are not such as were forbidden by the common law, or generally by the statutes of the states. Nor are they acts which, in their essential nature, are immoral or dishonest. For a man who is insolvent, or approaching insolvency, to pay a just debt, is not morally wrong, nor was it forbidden by any law in this country previous to the bankrupt act. And though a preference of creditors by transfer or assignment of property by an insolvent, may sometimes be unjust to the other creditors, it was not forbidden by the common law, and is not forbidden by many of the states.

It is very certain that such a preference may consist with the highest obligations of morality, and under circumstances which any one can imagine it may be the dictate of the purest justice in reference to all concerned. The careful and diligent framers of the bankrupt act were fully aware of all that has just been said.

But they were about to frame a system of laws, one main feature of which was to provide for the distribution of the property of an insolvent debtor among his creditors, and they adopted wisely, as the general and pervading rule of distribution, equality among creditors. But they found that this general principle could not without hardship be made of universal application. When a creditor had obtained by fair means a lien on any property of the bankrupt, that lien ought to be respected. If he had so obtained payment of the whole or a part of his debt, the payment ought to stand. These exceptions to the general rule of distribution were however liable to be abused, and might be used to defeat the purposes of the bankrupt law. The bankrupt, knowing that he must soon be helpless, would desire to pay or secure favorite creditors. They knowing his inability to pay, and his liability to be called into a bankrupt court, would naturally desire to secure themselves at the expense of other creditors.

In this dilemma, congress said we cannot prescribe any rule by which a preference would be held to be morally right or wrong; and it would be fatal to the administration of the law of distribution to permit such a question to be raised. We will therefore adopt a conventional rule to determine the validity of these preferences.

In all cases where an insolvent pays or secures a creditor to the exclusion of others, and that creditor is aware that he is so when he receives it, he shall run the risk of the debtor's continuance in business for four months. If the law which requires equal distribution, is not called into action for four months, the transaction, if otherwise honest, shall stand; but if by the debtor himself, or any of his creditors, that law is invoked within four months, the transaction shall not stand, but the money or property received by the party shall become a part of the common fund for distribution.

Congress in this view seems also to have thought that in case of a creditor who had already parted with his money or property to the insolvent party, and whose reasons for such further dealing with him were more pressing, that he might be saved from an impending loss. the time which should secure the transaction from the effect of the bankrupt law should be less by two months, than in the case of one who, having no such incentive to action, became a volunteer purchaser of an insolvent's property, with knowledge of his insolvency.

It is in a similar spirit that the provision in section twenty-three, which forbids a person accepting such a preference, from sharing in the assets of the bankrupt, uses the qualifying phrase, "until he shall first have surrendered to the assignee all that he had received under such preference."

I do not see any necessary contradiction between section thirty-nine and this view of section thirty-five. The former is a very long one, and recites all the acts which subject a person to involuntary bankruptcy, and that is the main purpose of the section. Among the acts which constitute a man a bankrupt, are those of giving preference to creditors in contemplation of bankruptcy. And it is in conclusion of that section declared in general terms, that if the debtor shall subsequently be declared a bankrupt, his assignee may recover the money or other property which was the subject of the act of bankruptcy. But this general declaration of the right of the assignee to recover is not inconsistent with the limitation of the right in another section, to cases occurring within six and four months of the commencement of the bankrupt proceedings. The general declaration of a state statute. that a person shall recover land by an action of ejectment, is not inconsistent with the provision in the statute of limitations that such actions must be brought within ten years after they have accrued. Nor is it inconsistent with the still more comprehensive right of suit conferred on the assignee by the fourteenth section of the act.

The thirty-fifth section and the thirty-ninth section, having for the first time set up a rule by which certain payments and transfers of property shall be declared void (a rule at variance with the common law, and with the statutes of the states), very properly limits and defines the circumstances within which this new rule shall operate. These are, among others, that the recipient of the bankrupt's money or property must have had reasonable cause to believe he was insolvent, and that the transaction must have been recent when the bankrupt law was applied to the case,—with a creditor within four months and with the general purchaser within six months.

As to all illegal or fraudulent transactions which are so by common law, by statute law, or by any other recognized rule of law, other than these special provisions of the bankrupt law, that act has imposed the limitation of two years on the assignee in bringing his suit, and by that they are governed. But the case made by the plaintiff does not come within any such law known to us. Therefore, his declaration is bad, and the demurrer was properly sustained by the district court, whose judgment is affirmed.

Affirmed.

NOTE. [from original report.] Bankrupt Act—Construction of 35th Section, as to Limitations and Preferences. Affirmed, Gibson v. Warden, 14 Wall. [81 U. S.] 249. Followed, Maurer v. Frantz, [8 Phila. 505;] In re Dow, [Case No. 4,036;] Collins v. Gray, [Id. 3,013;] Anibal v. Heacock, 2 Fed. 171. 173; Coggeshall v. Potter, [Case No. 2,955;] Matthews v. Westphal, [48 Fed. 664;] Bean v. Brookmire, [Case No. 1,169.] Cited in Re Scott, [Id. 12,518;] Darby's Trustee v. Boatman's Sav. Inst., [Id. 3,571;] Bean v. Brookmire, [Id. 1,170;] Harvey v. Crane, [Id. 6,178;] Jordan v. Downey, 40 Md. 413. Doubted, Ex parte Mendell, (In re Butler.) [Case No. 9,418.]

[For other cases involving this bankruptcy, see Bean v. Amsinck, Case No. 1,167; Bean v. Brookmire. Cases Nos. 1,169 and 1,170; Bean v. Laflin, Case No. 1,172; Brookmire v. Bean, Id. 1,942; Kinsing's Assignee v. Bartholew, Id. 7,831; In re Kintzing, Id. 7,833.]